**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------X
In re:                                                                            :            CHAPTER 11
                                                                                         :
STATE DRIVE-IN CLEANERS, INC.              :            CASE NO.: 16-50502
                                                                                         :
                    Debtor                                                  :            DATE: March 20, 2017

## THIRD AMENDED PLAN OF REORGANIZATION

STATE DRIVE IN CLEANERS INC.., ("Debtor"), proposes the following plan of Reorganization ("Plan"), to its Creditors pursuant to §1121 (a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et. seq.) (The "Bankruptcy Code").

## ARTICLE ONE

## DEFINITIONS

For purposes of this Plan of Reorganization, the following terms shall have the respective meanings as hereinafter set forth and shall be capitalized when used as terms defined in this Article I. Other capitalized terms used herein are defined in the Bankruptcy Code.

1.01 "Administrative Claims" means the costs and expenses of administration of these Chapter 11 cases as, when and to the extent allowed by the Bankruptcy Court including, the actual, necessary costs and expenses of preserving the Debtor's estate, (other than such claims or portions thereof which, by their express terms, are not due or payable by the date when the Confirmation Order becomes a Final Order), all allowances of compensation or for reimbursement of costs and expenses under 330 of the Code, or as otherwise allowed by the Bankruptcy Court, and for all fees and charges assessed against the Debtor under Chapter 123 of Title 28 of the United States Code.

1.02 "Allowed Claim" means a Claim (a) which has been scheduled by the Debtor pursuant to 52l(a) and 1106(a)(2) of the Bankruptcy Code, other than a Claim scheduled as disputed, contingent, or unliquidated, or (b) proof of which has been filed pursuant to 501 (a) of the Bankruptcy Code within the time limitation fixed by order of the Bankruptcy Court, and as to which no objection to the

allowance thereof has been interposed, or (c) the portion of any Claim so scheduled or filed which, after objection thereto, has been allowed by a Final Order.

1.03 "Allowed Interest" means the equity interest in the Debtor held by the owners of the common stock.

1.04 "Allowed Priority Tax Claim" means that portion of an Allowed Claim entitled to priority under 507(a)(8), inclusive, of the Bankruptcy Code.

1.05 "Allowed Secured Claim" means that portion of an Allowed Claim equal to the value of the interest of the holder thereof in property of the Debtor securing such Allowed Claim as agreed upon between the holder thereof and the Debtor or, in the event of a dispute, as determined by the Bankruptcy Court pursuant to 506(a) of the Bankruptcy Code.

1.06 "Allowed Tax Claim" means that portion of a claim by a governmental unit entitled to priority under 507(a)(8) of the Bankruptcy Code.

1.07 "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut in which the Debtor's Chapter 11 case is pending.

1.08 "Chapter 11" means Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

1.09 "Chapter 11 Case" means STATE DRIVE-IN CLEANERS, INC., Case No. 16-50502 currently pending in the Bankruptcy Court.

1.10 "Claim" means a claim against the Debtor as defined in 101(5) of the Bankruptcy Code.

1.11 "Claimant" means the holder of an Allowed Claim.

1.12 "Confirmation" means entry of an Order confirming the Plan by the Bankruptcy Court in accordance with Chapter 11.

1.13 "Confirmation Date" means the date upon which the Bankruptcy Court enters an order confirming the Plan in accordance with Chapter 11.

1.14 "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan, in accordance with Chapter 11.

1.15 "Consummation" means payment on, or as soon as practicable after, the Effective Date of substantially all sums or other consideration due under the Plan as of such date.

1.16 "Debtor" means STATE DRIVE-IN CLEANERS, INC..

1.17 "Disbursing Agent" means the Debtor or its designee.

1.18 "Disputed Claim" means any Claim (i) which is scheduled or disputed, contingent or unliquidated, or (ii) proof of which has been filed within the time limitation fixed by an order of the Bankruptcy

Court pursuant to 50l(a) of the Bankruptcy Code, as to which an objection to the allowance thereof has been interposed, which objection has not been determined by a Final Order.

1.19 "Distribution Date" means the latter of the effective date or, as to a claim to which an objection is pending on the effective date, ten (1 0) days after the entry of a Final Order determining such claim or any part thereof to be an Allowed Claim.

1.20 "Effective Date" means the first business day more than 14 days after the Confirmation Date provided the Confirmation Order becomes a Final Order, or as soon as physically practicable thereafter.

1.21 "Final Order" means an Order or judgment which has not been reversed, stayed, modified or amended and as to which no appeal is pending and as to which the time to appeal and to seek leave to appeal or to seek review or rehearing has expired.

1.22 "Petition Date" means April 12, 2016 the date on which the Debtor filed the petition.

1.23 "Plan" means this Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with Chapter 11 of the Bankruptcy Code.

1.24 "Post-Confirmation Expense" means all expenses reasonably incurred subsequent to the entry of the confirmation order in consummating the Plan, including, but not limited to, fees and expenses of counsel and accountants retained by the Debtor pursuant to 327 and 1103(a) of the Code.

1.25 "Post-Petition" means occurring, arising or happening after the filing of the petition on April 12, 2016.

1.26 "Pre-Petition" means occurring, arising or happening prior to the filing of the petition on April 12, 2016.

1.27 "Pro-Rata" means, with respect to a claimant of a particular class, in the proportion that the allowed claim (or the then unpaid portion thereof) of such claim in such class bears to the aggregate allowed claims (or the aggregate then unpaid portion thereof) of all claimants in the same class. Included in such calculation shall be the full amount of the Disputed Claims in the particular class which have not been asserted or are otherwise pending and which have not yet been allowed or disallowed by a final order.

## ARTICLE TWO

## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.01 | <u>Class 1</u>: | Allowed secured claim: Sovereign Bank, N.A.: | $36,530.00 |
| 2.02 | <u>Class 2</u>: | Allowed secured claim: Glenn Thornhill: | $3,200.00 |
| 2.03 | <u>Class 3</u>: | Allowed Unsecured priority Claim: IRS: | $1,138.74 |
| 2.04 | <u>Class 4</u>: | Allowed General Unsecured Claims: | $212,473.62 |
| 2.05 | <u>Class 5</u>: | Equity Class | |

## ARTICLE THREE

## TREATMENT OF CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

3.0.    **Administrative Claims**.

The costs and expenses of administration of the Chapter 11 Case allowed under §507(a)(2) of the Bankruptcy Code are to be paid in full upon confirmation, or as proposed in this Plan of Reorganization, or as agreed between the Debtor and the parties holding such claims. Included herein are claims incurred in the Chapter 11 Case by the Debtor. The fees required to be paid to the United States Trustee, shall be paid in full on the confirmation of the Debtor's Plan of Reorganization.

Included in Administrative Expenses are fees and expenses of Law Offices of Thomas V Battaglia, Jr., LLC, retained by the Debtor. The fees and expenses will be paid on the effective date, or as soon thereafter as they are approved by the Bankruptcy Court. The funds and terms to pay the fees and expenses of Law Offices of Thomas V Battaglia, Jr, LLC will be available from the Debtor and paid prior to the distribution to the secured creditors.

3.1    **Classification Of Claims And Equity Interest**

The following table summarizes the classifications established under the Plan, indicating the approximate amount of claims of that class, whether the status of that class is impaired or unimpaired by the Plan, and the treatment of the claims of that class.

**Class 1 -Allowed secured claim:  Sovereign Bank, N .A.**

1. Approximate Amount:  36,530.00
2. Impaired
3. Treatment: This is the secured portion of the claim of Sovereign Bank, in the approximate amount of $ 36,530.00, secured by all of the personal property of the Debtor. The debtor shall pay this claim in full in 68 equal monthly installments commencing thirty (30) days after the effective date of the plan or May 1, 2017, whichever date is later, at the monthly rate of $537.21 each month until the claim is paid in full.  If there is a complete or partial sale of the Debtor's assets that involves the pieces of equipment that is security for this loan, the proceeds from that sale will be used to satisfy the obligations owed to the Class 1 holder.

**Class2:  Allowed secured claim:  Glenn Thornhill**

1. Approximate Amount:  3,200.00
2. Impaired
3. Treatment:  This is the secured portion of the claim of Glenn Thornhill, Inc. in the approximate amount of $3,200.00 which will be paid its claim in full in 68equal monthly installments commencing thirty (30) days after the effective date of the plan or May 1, 2017, whichever date is later, at the monthly rate of $47.06 each month.  Until paid, said Creditor shall retain its lien.

**Unsecured Priority Claims:**

There is one class comprising these creditors. This section is comprised of claim of the Internal Revenue Services.

### Class 3- Allowed Unsecured Priority Claim- Internal Revenue Services, 507(a)(8)

1. Approximate Amount: $1,138.74
2. Not Impaired
4. Treatment: Treatment: This is the Claim of the United States Department of the Treasury, Internal Revenue Services, representing the priority portion of unpaid taxes. Under the Plan of Reorganization the claim is classified as an unsecured priority claim pursuant to 11 U.S.C. §507(a)(8). Pursuant to 11 U.S.C. §1129(a)(9)(C)(ii) Class 5 needs to be paid in full with interest within 5 years from the date of relief. The Debtor is proposing to pay this claim within 5 years from the date of relief. The total debt of this class is $1,138.74. The Debtor proposes to pay the total of principal and interest in the amount of $1,138.74 with interest at 3% for 45 months commencing 30 days from the effective date of the Plan at the monthly amount of $26.79. If confirmation is delayed and the effective date of the Plan is later than the anticipated May 2017, the Debtor shall adjust the payment of this claim in equal increments to make the required payments as required by ll U.S.C. § ll29(a)(9)(C)(ii).

**Unsecured Nonpriority Claims**

Unsecured Creditors are provided for in Class 4.

**Class 4:      Allowed General Unsecured Claims**

1. Approximate Amount: $212,473.62
2. Impaired
3. Treatment: This class includes the submitted claims of unsecured creditors that have "allowed claims" as defined by 11 U.S.C. §502, or creditors that did not file a Proof of

Claim, but the amount of the debt was listed on Schedule F as filed by STATE DRIVE IN CLEANERS, INC as well as the unsecured portions of the Claims of Sovereign Bank and Glenn Thornhill as determined by stipulation of the parties and/or order of the bankruptcy Court.. Under the Plan of Reorganization, these claims are classified as unsecured claims, pursuant to 11 U.S.C. §506(a).

A listing of the creditors and their claim amount is as follows: the unsecured portion of Sovereign Bank claim in the amount of $111,279.13, the unsecured portion of Glen Thornhill's Claim in the amount of $1800.00, the unsecured claims of Evans Feldman & Ainsworth LLC in the amount of: $5,356.10, Eversource in the amount of: $941.69, Petro Inc. in the amount of: $23,999.75, Anita Frigo in the amount of: $30,000.00, Baldwin Pearson in the amount of: $1,100.00, Bank of America in the amount of: $24,000.00, HiHo Oil Co. in the amount of: $4799.52, Lutz & Carr CPA in the amount of: $162.00, Minda Supply in the amount of: $4737.34, Pay USA in the amount of: $3,640.62, Safety Kleen Systems Inc in the amount of: $657.47, for a Total of $212,473.62. Payment will be made to this class in the amount of $312.46 per month for 68 months commencing 30 days from the effective date of the plan and each creditor in the class will receive its pro rata share which shall result in not less than a 10% dividend on said claims pro-rata

**Class 5:        Equity Class**

This is the equity ownership of the debtor currently held by Arnold Raclyn. The Equity Holder shall retain his interest in the Debtor in exchange for the substantial contributions made during the pendency of the case and future contributions to the Debtor.

## ARTICLE FOUR

## EXECUTION OF THE PLAN AND DISCHARGE

The Debtor proposes to fund payment of the plan with ordinary business income. The Debtor believes

that moving forward the income from business operations will be sufficient to provide revenue to support a successful Plan of Reorganization as well as afford the Debtor the ability to pay all other current expenses as they may become due. With the exception of the Class 3 priority claim of the IRS, the debtor proposes to pay all allowed claims over a sixty eight month period in accordance with provisions of the Plan.  During the pendency of the case the Debtor has filed its Operating Reports. The monthly operating reports contain various financial disclosures on a monthly basis since the case was filed.   The significant benchmark items consist of the gross receipts, monthly operating expenses and net monthly profits.   A table of monthly income and expenses  can be found as exhibit "C" attached to the Debtor's Disclosure Statement.  An analysis of the operating reports from the inception of this case only show a part of the story. Due to the seasonal nature of the business, a full year analysis is required to get the true annual profit figures.  Consequently, The Debtor has included monthly figures from January 1, 2016 through December 31, 2016.  Based on the annual figures, the Debtor had gross receipts for 2016 of $659,703.00 and annual operating expenses of $650,657.00 leaving a net operating profit of $9,046.00 or $753.83 per month.  The aggregate monthly plan payments to creditors under the proposed plan are $917.19/month.  While the profits for the 2016 year would leave a small deficit each month in the required plan payments, that deficit can be made up by contributions from the principal as well as anticipated growth in the pick-up and delivery aspect of the business.  Additionally, once a plan is finally confirmed and the case is closed, the quarterly Trustee fees, currently in the approximate amount of $1,625.00 per quarter will be eliminated thereby increasing the anticipated profits by $541.67 per month and creating a surplus from which to fund the plan payments.

## ARTICLE FIVE

## EXECUTORY CONTRACTS

The Debtor currently leases approximately 3200 square feet at the premises located at 224 Post Road East, Westport CT where it conducts both its retail storefront and the dry cleaning operations as well. The current lease runs through November of 2017 with an option to renew for an additional five years, through November 2022. The debtor intends to exercise that option in accordance with the terms of the lease. The Lease has been assumed by the Debtor which lease assumption was approved by order of the Bankruptcy Court on October 27, 2016.

## ARTICLE SIX
## GENERAL PROVISIONS

1. The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code.

2. Except as otherwise provided herein, Confirmation of the Plan shall constitute full settlement, release and discharge of any and all claims in the Chapter 11 Case.

3. The Debtor shall act as its own disbursing agent under the Plan and shall establish such account or accounts as may be required therefore with respect to the payments to be made to the holders of all claims.

4. Notwithstanding any other provisions hereof respecting time of payment, no payment shall be made on a Disputed Claim until the entry of a Final Order resolving such dispute.

5. The Debtor is authorized to make payments on a Claim to the holder thereof as set forth in the most recent proof of such Claim filed with the Court, or in the absence of a proof, to the holder as scheduled by the Debtor or ordered by the Court.

## ARTICLE SEVEN

## PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTINGENT CLAIMS

1. Objection Deadlines: As soon as practicable, but in no event later than the the effective date of the Plan, Objections to Disputed Claims shall be filed with the Bankruptcy Court and subsequently served upon the Holders of each of the Disputed Claims.  Debtor does not intend to object to any claims.

## ARTICLE EIGHT

## DEFAULT AND MODIFICATION

1. The occurrence of any of the following shall constitute an Event of Default:

(A) Failure on the part of the Debtor to pay fully when due any payment required to be made in accordance with the provisions of this Plan, which failure remains uncured for a period of thirty (30) days after written notice from the Claimant so affected; and

(B) Failure on the part of the Debtor to perform or observe any term or provision set forth in this Plan, other than those referred to in subsection (1) above, or set forth in any document or instrument delivered in connection herewith, which failure remains uncured for a period of sixty (60) days after written notice from the Claimant so affected.

2. If an Event of Default shall have occurred and be continuing without cure for the applicable time period set forth in 1 above, all Claimants covered by this Plan shall have the right to pursue any and all remedies available to them under law and, as to holders of Allowed Secured Claims as to whom an Event of Default has occurred and remained uncured, said holders shall be permitted to take possession of their collateral without further recourse to the Bankruptcy Court or other Courts.

3. The Plan may be modified upon application of the Debtors or corrected prior to entry of the Confirmation Order without additional disclosure, pursuant to §1127 of the Bankruptcy Code, provided that, after notice and hearing, the Bankruptcy Court finds that such  modification does not materially or adversely affect any claimant or class of claimants and the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

4. After the entry of the Confirmation Order, the Debtors, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of any such claimants or

class of claimants, may remedy any defect or omission or reconcile any inconsistencies in the Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan..

## ARTICLE NINE
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the final allowance or disallowance of all Administrative Expenses and Claims, but only with respect to the following matters:

1. To enable the Debtor to complete any and all proceedings which they may bring prior to entry of the Confirmation Order, to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which it may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

2. To adjudicate all controversies concerning the classification or allowance of any Claim or equity security interest;

3. To hear and determine all Claims arising from the rejection of any executory contracts, including leases, and to complete the rejection and termination thereof with respect to any executory contracts as to which an application for rejection or termination is filed prior to entry of the Confirmation Order;

4. To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

5. To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof including any Order of the Bankruptcy Court as entered by this Court during the pendency of the Chapter 11 proceedings;

6. To recover all assets and properties of the Debtor wherever located;

7. To fix the allowance of compensation to all professionals; and to determine any disputed Administrative Expenses;

8. To determine such other matters for which provision is made in the Confirmation Order;

9. To issue such Orders and enforce such Orders as are necessary, integral or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof, and to authorize modifications of the Plan consistent with the Bankruptcy Code, along with hearing Motions and adjudicating matters that arise under Article IV for the funding of the Plan

## ARTICLE TEN
## DISCHARGE AND RELEASE

Except as otherwise provided in the Confirmation Order or the Plan, the entry of the Confirmation Order acts as a discharge effective as of the effective date of any and all debts of the Debtor that arose at any time before entry of the Confirmation Order including, but not limited to, all principal and interest accrued thereon, pursuant to § 1141(d)(l) of the Bankruptcy Code. The discharge of the Debtor shall be effective as to each claim, regardless of whether a proof of claim therefore was filed, whether the claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

## ARTICLE ELEVEN
## NOTICES

All notices required to be made in or under the Plan shall -be in writing and shall be mailed by registered or certified mail, return receipt requested:

1. If to the Debtors, State Drive-In Cleaners, c/o Law Offices of Thomas V Battaglia, Jr., LLC, 3267 Main Street, Stratford, Connecticut 06614.

2. If to a creditor, at the address set forth on the Debtor's schedules or on a proof of claim of

such Creditor, if one has been filed. Any person may change the address at which he or she is to receive notices for purposes of the Plan by sending written notice pursuant to this provision to the Person to be charged with knowledge of such change

STATE DRIVE IN CLEANERS INC..

By _____
Arnold Raclyn, President

By _____
Thomas V. Battaglia, Jr.
Debtor's Attorney